## 20476

NATIONAL GRANGE MUTUAL INSURANCE COMPANY, Respondent, v. William F. PRIOLEAU, Jr., Receiver for Consolidated Securities, Inc., Appellant.

(236 S. E. (2d) 808)

*Thomas Kemmerlin, Jr.,* of Columbia, *for Appellant,*

*R. Bruce Shaw,* of Columbia, *for Respondent,*

August 2, 1977.

GREGORY, Justice:

On appeal to the circuit court the trial judge overruled all exceptions and affirmed the Report of the Master In Equity which concluded that the respondent (plaintiff below) should be held and declared liable as a surety under the subject bond in a sum not to exceed $10,000 (plus interest from and

after September 19, 1969) with respect to the entire effective period during which the bond, including renewal or continuation periods, was in force.

In our view the order of the trial judge sets forth and correctly disposes of all issues submitted to this Court. We affirm and adopt that order, with minor deletions, as the directive of this Court.

## ORDER OF JUDGE MOSS

This declaratory judgment action was instituted by plaintiff, National Grange Mutual Insurance Company, against the defendant, the Receiver for Consolidated Securities, Inc., seeking a construction of the plaintiff's bond wherein Consolidated Securities, Inc. is the principal and National Grange is the surety. This bond was issued on May 18, 1962, pursuant to Section 62-111 of the South Carolina Code of Laws. Section 62-111 of the South Carolina Code provides as follows:

§ 62-111. Bonds or deposits of broker-dealers, agents and investment advisers.—Registered broker-dealers, agents and investment advisers shall post surety bonds in amounts of ten thousand dollars for broker-dealers and investment advisers and one thousand dollars for agents, conditioned that the registrant will comply with the provisions of this chapter and such orders and regulations as the Commissioner may from time to time prescribe. Such bond may be so drawn as to cover the original registration and any renewal thereof. Any appropriate deposit of cash or securities shall be accepted in lieu of any such bond. Every bond shall provide that no suit may be maintained to enforce any liability thereon unless brought within two years after the sale or other act upon which such suit is based and shall also provide that the liability of the surety on each such bond to all persons aggrieved shall in no event exceed in the aggregate the penal sum thereof. (1961 [52] 185.)

The plaintiff's obligation under its bond was conditioned upon the principal's compliance with the South Carolina

Uniform Securities Act, Section 62-1, *et seq.* of the 1962 Code and provided, in pertinent parts as follows:

The Liability of the surety hereon to all persons aggrieved shall in no event exceed in the aggregate Ten Thousand ($10,000.00) Dollars in any registration period or in any renewal thereof.

This Bond is a continuous obligation and shall cover the full period or periods of registration of the principal, including initial and renewal registration.

It is undisputed that the principal, Consolidated Securities, Inc., was required under the above act to register for a period of one year and thereafter to renew its registration each year. Further, it was stipulated by the parties to this action that the "bond was renewed or continued in effect each year for several years", in that, for the purposes of this action only, "during each of two years while the bond was in effect, a loss of $10,000 a year, that is $20,000 for the two years was sustained." The plaintiff conceded its liability under the bond for losses of $10,000 occurring in one year during the life of the bond, prior to September 19, 1969, but it denied any liability in excess of $10,000, even though additional or other losses occurred in another registration period for which the bond continued in effect. It is the defendant's position that the plaintiff, under the bond, would be responsible for $10,000 during each registration period if losses in that amount occurred in each of such registration periods.

As noted above, the bond provides that it is a continuous obligation covering the full period or periods of registration of the principal including initial and renewal registrations. The bond does not terminate at the end of any registration period, but may only be cancelled by either the principal or the surety by giving thirty (30) days written notice of such cancellation. Such provision is not contrary to Section 62-111 of the South Carolina Code. That section provides, as an alternative to posting a surety bond, for the deposit of a

cash bond by the registrant. The statute also states that the bond shall provide that no suit may be maintained to enforce any liability thereon unless brought within two years after the wrongful act. The posting of a cash bond, as an alternative to a surety bond, would also be a continuing obligation. If a registrant should adopt the alternative procedure of posting a cash bond, the maximum that could be recovered under the circumstances in this case would be the sum posted, regardless of the number of years and the amounts involved in defaults under the cash bond. The bond states that it is a continuous obligation and it should be noted that nothing is required of either the surety or the principal to renew the bond at the end of each registration period. Affirmative action is required in the form of thirty (30) days notice by either the surety or the principal to effect a termination of the bond. I do not think that the bond or the statute meant for the surety to be obliged to pay the maximum amount of the bond if losses in that amount occurred in each of successive registrations.

The defendant relies heavily upon the case of *Giese, et al. v. Engelhardt, et al.,* 175 N. W. (2d) 578 (N. D. 1970) to substantiate its position. However, I do not find that the South Carolina Securities Act, including the section requiring the bond, is as broad in purpose as the North Dakota Act, and, therefore, do not find that case controlling under the circumstances present here. In this connection, it should be noted that the legislature provided for a bond in a set amount which was contrary to the North Dakota Statute, and, further limited the time within which a suit could be maintained on the bond to two years. Further, Section 62-111 provides:

"Such bond may be so drawn as to cover the original registration *and* any renewal thereof."

It is my view that the legislature in South Carolina envisioned a continual obligation covering the original regis-

tration, and the renewals thereof, without intent that the liability of the surety be cumulative after each registration.

LITTLEJOHN and NESS, JJ., concur.

LEWIS, C. J., and RHODES, J., dissent.

LEWIS, Chief Judge (dissenting):

This action for declaratory judgment involves a determination of the maximum liability of a surety on a bond filed pursuant to Section 62-101 *et seq.* of the 1962 Code of Laws (part of the Uniform Securities Act of South Carolina), where the bond has been renewed for several years and losses in the penal amount of the bond occur in each of two years while the bond is in effect.

The Securities Act requires every registered securities dealer in this State to post a bond in the amount of ten thousand dollars conditioned for compliance with the provisions of the Act. Consolidated Securities, Inc., was registered as a securities dealer and filed a bond in the foregoing amount with respondent, National Grange Mutual Insurance Company, as surety.

The registration of Consolidated was required to be renewed each year and was renewed for several years. On each annual renewal the original bond was renewed with respondent receiving an identical premium for each year the bond was renewed.

Consolidated was placed in receivership and it is conceded that during each of two years, while the bond was in effect, a loss of ten thousand dollars a year, a total of $20,000.00 for the two years, was sustained.

This action was instituted by respondent to determine whether it was liable for the loss sustained in both years.

Respondent admits liability for the loss of $10,000.00 occurring the first year but denies that it owes any part of the loss for the second year, asserting that its liability is a

continuing one for only the penal amount ($10,000.00) stated in the bond.

Appellant, the receiver for Consolidated, contends, on the other hand, that respondent is liable also for the loss sustained during the second year, arguing that the bond was filed to cover each twelve month registration period of Consolidated under the statute and gave protection for the full amount for each year the bond was in force.

The question then is whether respondent's liability is limited to the penal amount of the bond, or whether the renewals of the bond for successive years created a cumulative liability for the penal amount in each of the years it was in effect. The lower court held that the bond was a continuous obligation and that liability under it could not exceed the penal amount of $10,000.00. I think that this was error and would reverse.

The present bond states no term but only the date of issue and, effective date, May 18, 1962. It specifically states that it is "a continuous obligation and shall cover the full period or periods of registration of the principal, including initial and renewal registrations." The bond further provides that "the liability of the surety hereon to all persons aggrieved shall in no event exceed in the aggregate ten thousand ($10,000.00) dollars in any registration period or in any renewal thereof." The only method of cancelling the bond is by thirty (30) days notice by the surety or principal. From the terms of the bond alone, it is a continuous obligation under which $10,000.00 would be the maximum liability.

However, liability under the bond cannot be determined from its terms alone, but must be construed in the light of the requirements of the statute under which it was issued. The present bond was posted pursuant to the requirements of the South Carolina Uniform Securities Act (Code Section 62-1 *et seq.*) and the terms of that statute must be read into the bond as a part thereof. In other words, if the pro-

visions of the statute required the bond issued by respondent in this case to provide cumulative liability, the language of the bond could not make it a continuous obligation with a maximum liability of $10,000.00.

The present bond was issued pursuant to Code Section 62-111 which reads as follows:

Registered broker-dealers, agents and investment advisers shall post surety bonds in amounts of ten thousand dollars for broker-dealers and investment advisers and one thousand dollars for agents, conditioned that the registrant will comply with the provisions of this chapter and such orders and regulations as the Commissioner may from time to time prescribe. Such bond may be so drawn as to cover the original registration and any renewal thereof. Any appropriate deposit of cash or securities shall be accepted in lieu of any such bond. Every bond shall provide that no suit may be maintained to enforce any liability thereon unless brought within two years after the sale or other act upon which such suit is based and shall also provide that the liability of the surety on each such bond to all persons aggrieved shall in no event exceed in the aggregate the penal sum thereof.

The Uniform Securities Act makes it unlawful for any person to transact business in this State as a securities broker-dealer or agent unless he is registered with the Securities Commissioner. Code Section 62-101. Under Section 62-103, every registration under the Securities Act "expires one year from its effective date unless renewed"; and a filing fee is required for every initial or renewal registration, Section 62-108.

These provisions of the Securities Act provide for the annual registration or licensing of a securities broker-dealer and the bond required by Section 62-111, quoted above, is a condition precedent to the issuance of such annual registration or license. It is inescapable, therefore, that the statute required the bond for the specific term of the registration which was one year.

The fact that the statute permits the bond to be "so drawn as to cover the original registration and any renewal thereof" is of no controlling significance in determining the present question of liability, since the original registration and the renewals were for one year each. In other words, the fact that the bond may be so drawn as to cover renewals does not alter the fact that the statute specifically requires annual registration and the posting of the bond to cover each period of registration. It simply permits the original bond to be so drafted as to constitute continuing compliance with the annual registration renewal.

If the bond here is construed as a continuous obligation, as held by the lower court, the result would be that the annual renewals of registration were issued or permitted without the posting of the statutory bond, since the original bond of ten thousand ($10,000.00) dollars would meet the requirements of the subsequent registrations. There is nothing in the statute to indicate a legislative intent to provide less security or protection for the public during the annual renewal periods than in the original period (year) of registration. This would be the result if the obligation of the original bond is continuous, for renewals upon the basis of the original bond would amount to subsequent registrations without bond.

It is contended, however, that the statute limits liability to ten thousand ($10,000.00) dollars since it states that "the liability of the surety on each such bond to all persons aggrieved shall in no event exceed in the aggregate the penal sum thereof." Since the obligation of the statutory bonds provides coverage in the penal sum thereof for each year that they are in force, the foregoing provision applies to the liability assumed under the bond posted annually and does not operate to convert the statutorily required cumulative liability into a continuous obligation.

The statute also permits "any appropriate deposit of cash" in lieu of the required bond. It is argued that this permits

a cash deposit of $10,000.00 which could be maintained as the deposit for any renewal registrations. This argument, of course, is based upon the assumption that the statutory bond creates a continuous obligation to the extent only of the penal amount thereof. Construction of the statutory bond as creating a cumulative liability renders the foregoing assumption false.

I construe the bond in question as providing a cumulative obligation for the penal amount thereof for each year it is in force. The judgment of the lower court should accordingly be reversed and the cause remanded for the entry of judgment in accordance with the views herein.

RHODES, J., concurs.