ELLEN TOMLINSON v. CAMEL CITY MOTORS, INC., JAMES ALBERT (BABE) JOHNSON, JR., BARCLAYS AMERICAN/FINANCIAL, INC., AND LAWYERS SURETY CORPORATION

No. 93PA91

(Filed 3 October 1991)

1. **Automobiles and Other Vehicles § 161 (NCI4th) — dealer's fraudulent inducement of purchaser — trebled damages — amount of surety's liability**

An automobile dealer's fraudulent inducement of plaintiff to purchase an automobile by falsely promising her that it would make the remaining installment payments on her trade-

in vehicle constituted a violation of N.C.G.S. § 20-294(4). Where plaintiff obtained a default judgment against the dealer for $3,459.72 for an unfair or deceptive act or practice under N.C.G.S. § 75-1.1 based on this fraudulent inducement, such amount was trebled under N.C.G.S. § 75-16, and plaintiff did not allege further actual damages that would transform the trebled portion of the award from a punitive to a compensatory award, the loss "suffered" by plaintiff within the meaning of N.C.G.S. § 20-288(e) was the total amount of the unpaid payments, $3,459.72, and the surety on the dealer's bond was thus liable under the statute only for that amount and was not liable for the trebled portion of the damages.

   **Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 735.**

2. **Automobiles and Other Vehicles § 161 (NCI4th)— surety on dealer's bond—when liable for treble damages**
   The surety on an automobile dealer's bond may be liable to an injured consumer for treble damages where the consumer has lost a great deal more than the initial damages by spending extra money and time to gain a modicum of satisfaction, and the trebled portion of the award is seen as compensating the consumer for those losses rather than as punitive in nature. In that instance, the consumer would have "suffered" more than the initial damages within the meaning of N.C.G.S. § 20-288(e).

   **Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 735.**

   Justice WEBB concurring.

   Justice MEYER joins in this concurring opinion.

   Justice FRYE dissenting in part.

ON defendant Lawyers Surety Corporation's petition for discretionary review of a decision of the Court of Appeals, 101 N.C. App. 419, 399 S.E.2d 147 (1991), which affirmed the judgment of *Reingold, J.* (and denied plaintiff's motion as to sanctions), at the 7 February 1990 session of District Court, FORSYTH County. Heard in the Supreme Court on 12 September 1991.

## TOMLINSON v. CAMEL CITY MOTORS

[330 N.C. 76 (1991)]

*Legal Aid Society of Northwest N.C., Inc., by Hazel M. Mack, for plaintiff-appellee.*

*Moore & Van Allen, by E.K. Powe and William E. Freeman, for defendant Lawyers Surety Corporation.*

MARTIN, Justice.

This action was filed on 29 January 1988 by the plaintiff-appellant for actual damages, consequential damages, special damages, treble damages for unfair or deceptive acts or practices under N.C.G.S. § 75-1.1, and reasonable attorney fees. The defendant surety answered; however, the defendant car dealership failed to answer the complaint. Default judgment was entered on 23 October 1989 against the car dealership. The trial court awarded the plaintiff $3,459.72 in damages pursuant to N.C.G.S. § 75-1.1 which was trebled pursuant to N.C.G.S. § 75-16. The court also awarded the plaintiff $2,563.00 in attorney fees under N.C.G.S. § 75-16.1. To collect the award, the plaintiff moved for summary judgment against the dealer's surety for the $10,379.16 award. On 7 December 1989, the trial judge granted plaintiff's motion for summary judgment against the defendant surety for treble damages and attorney fees. The Court of Appeals affirmed. We affirm in part and reverse in part.

Plaintiff Tomlinson went to Camel City Motors to trade in her car for another vehicle. As part of the sale, Camel City Motors agreed to assume the payments on the car which the plaintiff was trading in. However, Camel City Motors failed to make such payments. Plaintiff filed suit against Camel City Motors and its surety, the defendant in the present appeal. The original complaint included a claim for unfair or deceptive acts or practices pursuant to N.C.G.S. § 75-1.1. The plaintiff moved for summary judgment against the surety to collect on the $15,000 bond posted by the defendant surety which is required by N.C.G.S. § 20-288(e). The statute states in part that both the motor vehicle dealer and its surety will be liable to any consumer who suffers a loss or damages by any act of the motor vehicle dealer that violates either article 12 or article 15 of chapter 20 of the General Statutes of North Carolina.

The plaintiff contends that because the surety did not appeal from the underlying judgment against the dealer, the surety should pay the entire award. The plaintiff further contends that the appeal of the judgment against the surety is a collateral attack on the

underlying judgment against the principal. We disagree. The principal suffered a default judgment for its failure to file a responsive pleading; the surety answered the complaint and was not in default. The surety concedes that the judgment must be paid and does not question the outcome of the underlying action. The surety contends, however, that it should not be required to pay the entire amount of the judgment. At the time that the default judgment was entered against its principal, the surety could raise only defenses concerning the substance of the claims. The defense of limitation of liability of the surety, provided for in N.C.G.S. § 20-288, was not relevant to the principal or the underlying action. The surety is entitled thereafter to assert N.C.G.S. § 20-288 in its own defense to plaintiff's claim.

Section 20-288(e) requires a motor vehicle dealer to post a bond in the principal sum of $15,000. The statute gives no further limitations. Section 20-288(e) provides that:

Any purchaser of a motor vehicle who shall have *suffered* any loss or damage by any act of a motor vehicle dealer that constitutes a violation of this Article [Article 12] or Article 15 shall have the right to institute an action to recover against such motor vehicle dealer and the surety.

N.C.G.S. § 20-288(e) (1985) (emphasis added). The two hurdles that need to be overcome within this statute are 1) the dealer's violation of either article 12 or article 15 of chapter 20 of the General Statutes of North Carolina and 2) the suffering of damages or losses by the consumer.

The practice of fraud by an automobile dealer upon a purchaser is a violation of article 12. In *Triplett v. James*, 45 N.C. App. 96, 262 S.E.2d 374, *cert. denied*, 300 N.C. 202, 269 S.E.2d 621 (1980), the Court of Appeals ruled that N.C.G.S. § 20-294, which sets out the grounds for revocation or suspension of a dealer's license, does not enlarge the coverage of N.C.G.S. § 20-288(e) to parties other than a purchaser. 45 N.C. App. at 99, 262 S.E.2d at 376. Section 20-294(4) states that a license may be revoked "for willfully defrauding any retail buyer, to the buyer's damage, or any other person in the conduct of the licensee's business."

[1] Although a dealer may lose his license for defrauding any person in the conduct of his business, "the bond required by G.S. 20-288(e) is a source of indemnity to purchasers only." *NCNB v.*

*Western Surety Co.*, 88 N.C. App. 705, 364 S.E.2d 675 (1988). To receive or retain a dealership license, the dealer must continually meet the requirements within N.C.G.S. § 20-294 including the requirement that the dealer not defraud consumers as specified in subsection (4). Otherwise, the dealer is in violation of article 12, chapter 20. Here, the dealer induced plaintiff to purchase a car and defrauded the purchaser by telling her that the dealer would make the remaining installment payments on the old car if the purchaser would trade it in with the dealer for another car, and these promised payments were not made. This fraudulent inducement by the dealer violated N.C.G.S. § 20-294(4).

Under N.C.G.S. § 20-288(e), the damages allowable are those that are "suffered." In the present case, the dealer did not pay the plaintiff's monthly car payments as required by their agreement. The total of the unpaid payments, $3,459.72, was the amount "suffered" by the plaintiff. She did not "suffer" further compensatory damages. We hold that under N.C.G.S. § 20-288 the surety is not liable for the trebled portion of damages. *See Darr v. Long*, 313 N.W.2d 215 (Neb. 1981).

[2]  The nature of trebling under N.C.G.S. § 75-16 is to protect the consumer from unscrupulous businessmen who defraud the innocent out of money and property. The state legislature created a private cause of action with chapter 75. *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (1981). Because the surety had no knowledge that the dealer was operating in a fraudulent manner, enforcing the exemplary and punitive damages against the surety would not produce the deterrent effect that is the purpose behind the statute. However, the purpose of this legislation was more than punitive. It was also meant to encourage private enforcement and provide a remedy for the aggrieved consumer. *Id.; Seafare Corp. v. Trenor Corp.*, 88 N.C. App. 404, 363 S.E.2d 643, *rev. denied*, 322 N.C. 113, 367 S.E.2d 917 (1988). In situations where the injured consumer has lost a great deal more than the initial damages by spending extra money and time to gain a modicum of satisfaction, the trebled portion of the award is seen as compensating the consumer for those losses rather than as punitive in nature. In that instance, trebling against the surety may be appropriate because the consumer would have "suffered" more than just the initial damages. Such is not the case here. The plaintiff has not alleged further actual damages that would transform the trebled portion of the award from a punitive to a compensatory award. The trebled amount

**TOMLINSON v. CAMEL CITY MOTORS**

[330 N.C. 76 (1991)]

of $10,459.72 would allow the plaintiff to recover from the surety more than the damages she actually "suffered."

The plaintiff does not lose her original verdict; she still has a judgment by the trial court against Camel City Motors for $10,379.16. The surety is only liable for the actual damages of $3,459.72. The plaintiff may still go forward to collect the remaining $6,919.44 from Camel City Motors.

As to the issue of attorney fees, the surety in its brief to the Court of Appeals did not argue this question, nor was it decided by the Court of Appeals. Review by this Court of decisions of the Court of Appeals is to determine whether there is any error of law in the decision of the Court of Appeals, and the scope of review by the Supreme Court is limited to the issues properly presented for first review in the Court of Appeals. *State v. Freeman*, 308 N.C. 502, 302 S.E.2d 779 (1983); *State v. Hurst*, 304 N.C. 709, 285 S.E.2d 808 (1982); *Sales Co. v. Board of Transportation*, 292 N.C. 437, 233 S.E.2d 569 (1977). Having failed to present this issue to the Court of Appeals, the surety cannot now do so before this Court.

The cause is remanded to the Court of Appeals for further remand to the District Court, Forsyth County, for the entry of an amended judgment against the defendant, Lawyers Surety Corporation, in the amount of $3,459.72 with interest from 7 December 1989, attorney fees in the amount of $2,563.00 with interest from 7 December 1989, and the costs of the action.

The decision of the Court of Appeals is

Affirmed in part and reversed in part.

Justice WEBB concurring.

I concur with the result reached by the majority, but I believe the majority has said too much. N.C.G.S. § 20-288(e) provides in pertinent part:

Any purchaser of a motor vehicle who shall have suffered any loss or damage by any act of a motor vehicle dealer that constitutes a violation of this Article [Article 12] or Article 15 shall have the right to institute an action to recover against such motor vehicle dealer and the surety.

TOMLINSON v. CAMEL CITY MOTORS

[330 N.C. 76 (1991)]

The surety in this case has conceded the dealer violated Article 12 and that the surety is liable for damages under this Article. The surety does not concede it is liable for treble damages under Chapter 75 of the General Statutes and I believe the surety is right.

N.C.G.S. § 20-288(e) makes the surety liable for claims under Article 12. Article 12 does not provide for treble damages and the surety is not liable for them. In this case, the plaintiff has sued the dealer under Chapter 75 and procured a default judgment. N.C.G.S. § 20-288(e) does not make the surety liable on this claim. She should be limited in her remedy against the surety to her Article 12 claim.

I believe it is a mistake on the part of the majority to create and discuss a hypothetical case in which the majority says treble damages might be appropriate. I do not believe they would be appropriate in any Article 12 action because the statute does not provide for treble damages. More importantly, however, I do not believe we should decide something that is not before us.

Justice MEYER joins in this concurring opinion.

Justice FRYE dissenting in part.

I respectfully dissent from that part of the Court's opinion which holds the surety liable for only one-third of the judgment entered against the principal, Camel City Motors. For the reasons outlined below, I believe the surety is liable for the full damage award of $10,379.16.

It is hornbook law that a surety is one who is "primarily liable for the payment of the debt or the performance of the obligation of another." *Branch Banking & Trust Co. v. Creasy*, 301 N.C. 44, 52, 269 S.E.2d 117, 122 (1980). Having conceded it is the surety for defendant Camel City Motors, defendant Lawyers Surety Corporation (Lawyers Surety) is liable for the entire judgment unless it is somehow relieved of its duty by statute, contract or other legally enforceable limitation. The Court correctly points out that the only limitation of liability under N.C.G.S. § 20-288(e) is the $15,000 bond amount. Defendant Lawyers Surety does not argue any contract limitation.

The Court, however, recognizes a well-established public policy exception to the general rule that a surety is liable for the debts

and obligations of its principal. Many courts have held, for obvious policy reasons, that a surety is not liable for punitive, exemplary or statutory penal damages. *See, e.g., Darr v. Long,* 313 N.W.2d 215 (Neb. 1981); *Butler v. United Pacific Ins. Co.,* 509 P.2d 1184 (Or. 1973). The Court today joins these courts because "enforcing the exemplary and punitive damages against the surety would not produce the deterrent effect that is the purpose behind the statute [N.C.G.S. § 75-16]." *Tomlinson v. Camel City Motors,* 330 N.C. 76, 408 S.E.2d 853. I do not disagree. The issue in this case, however, is whether the disputed portion of the damage award, *i.e.,* $6,919.44, is an award for exemplary and punitive damages, and therefore within the public policy exception. I do not believe it is, and therefore conclude that the surety is liable for the entire judgment entered against Camel City Motors.

Punitive damages have been consistently allowed in North Carolina "on the basis of its policy to punish *intentional* wrongdoing and deter others from similar behavior." *Newton v. Standard Fire Ins. Co.,* 291 N.C. 105, 113, 229 S.E.2d 297, 301 (1976) (emphasis added). The trebling statute in this case, by contrast, requires no evil intent and is only partially punitive in nature. *Marshall v. Miller,* 302 N.C. 539, 546, 276 S.E.2d 397, 402 (1981). As the Court said in *Marshall*:

> To begin with, it is an oversimplification to characterize G.S. 75-16 as punitive. The statute is partially punitive in nature in that it clearly serves as a deterrent to future violations. But it is also remedial for other reasons, among them the fact that it encourages private enforcement and the fact that it provides a remedy for aggrieved parties. It is, in effect, a hybrid.

*Id. See also Holley v. Coggin Pontiac, Inc.,* 43 N.C. App. 229, 237, 259 S.E.2d 1, 6-7, *disc. rev. denied,* 298 N.C. 806, 261 S.E.2d 919 (1979) ("Having multiple objectives of which some are not penal in nature, the statute cannot be deemed a penal statute . . . ."). While noting that many of our sister states require a finding of intentional wrongdoing to trigger treble damages for unfair trade practices, such damages under N.C.G.S. § 75-16 are "automatic once a violation is shown." *Marshall v. Miller,* 302 N.C. at 547, 276 S.E.2d at 402. The intent of the actor is irrelevant under N.C.G.S. § 75-16. *Id.* at 548, 276 S.E.2d at 403. To treat N.C.G.S. § 75-16 as primarily a penal statute, and therefore within the public policy

exception to general surety principles, is, I believe, inconsistent with this Court's previous holdings.

The Court seizes upon the word "suffers" in N.C.G.S. § 20-288(e), and points to *Darr v. Long*, 313 N.W.2d 215, to support its holding that the surety is not liable for treble damages in this case. A careful reading of *Darr*, however, belies this conclusion.

In *Darr*, treble damages were assessed against a car dealer for rolling back the mileage on used cars. The judgment was entered pursuant to 15 U.S.C. § 1989, which mandates treble damages for anyone who, "with *intent* to defraud, violates any requirement imposed under this subchapter . . . ." *Darr v. Long*, 313 N.W.2d at 217; 15 U.S.C. § 1989 (1982) (emphasis added). The subchapter violated in *Darr* was 15 U.S.C. § 1984, which makes it illegal for anyone to reset or alter odometers with *intent* to change the mileage. *Id.*; 15 U.S.C. § 1984 (1982). Under Neb. Rev. Stat. § 60-1419, a motor vehicle dealer is required to furnish a surety bond to indemnify any person for "any loss suffered" because of fraudulent practices. *Darr v. Long*, 313 N.W.2d at 216; Neb. Rev. Stat. § 60-1419 (Reissue 1978). After reviewing federal case law, the Nebraska Supreme Court concluded that 15 U.S.C. § 1989 is designed to punish or deter fraudulent auto dealers and to reward customers for bringing suit. *Darr v. Long*, 313 N.W.2d at 220. Thus, the court held that the surety was not liable for treble damages because 15 U.S.C. § 1989 is not designed to compensate an injured party for a "loss suffered."

The statute at issue in this case, N.C.G.S. § 20-288(e), also speaks of loss "suffered." Thus, reasons the Court, the same result should follow in this case as in *Darr*. What the Court fails to recognize, however, is that the Nebraska statute in *Darr* was interpreted in light of a federal trebling statute which requires evil intent and is primarily punitive in nature. By contrast, N.C.G.S. § 75-16 does not require bad faith and is not primarily a penal statute.

To decide this case, we must interpret N.C.G.S. § 20-288(e) in light of the *automatic* trebling provision of N.C.G.S. § 75-16. When this is done, we come to the inescapable conclusion that the losses "suffered" by the plaintiff under N.C.G.S. § 20-288(e) in this case *equal* the entire amount of the judgment entered against Camel City Motors. The public policy exception relied on in *Darr* is simply not applicable to a situation such as this in which good faith is irrelevant and deterrence is not the overriding goal.

Having determined that this case does not fall within the public policy exception to general surety principles, I would hold Lawyers Surety liable for the full default judgment. I concur with all other portions of the Court's opinion.